IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

| | | |
|---|---|---|
| **ANDREA LESURE** | § | **PLAINTIFF** |
| | § | |
| v. | § CIVIL ACTION NO. 2:05CV2187-LG-JMR | |
| | § | |
| **HOME DEPOT U.S.A., INC.** | § | **DEFENDANT** |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**BEFORE THE COURT** is the Motion for Summary Judgment [74] filed by Defendant Home Depot U.S.A., Inc. Upon reviewing the submissions of the parties and the relevant law, the Court finds that Defendant's Motion for Summary Judgment should be granted in part and denied in part.

**FACTS**

Plaintiff, Andrea LeSure, was employed by the Hattiesburg, Mississippi, Home Depot from June 2002 until July 28, 2005, when she was terminated for alleged violations of the store's attendance policy. On December 16, 2005, Plaintiff filed a Complaint against Defendant, alleging a hostile work environment claim, a race discrimination claim, a disparate pay claim, a 42 U.S.C. §1981 claim, a retaliation claim, and an intentional infliction of emotional distress claim.

**DISCUSSION**

**RACE DISCRIMINATION**

In order to set forth a prima facie case of employment discrimination, a plaintiff must demonstrate (1) that she belongs to a protected class; (2) that she was qualified for the position; (3) that she suffered an adverse employment decision; and (4) that she was replaced by someone

outside the protected class, or in the case of disparate treatment, that similarly situated persons outside her protected class were treated more favorably under circumstances that were "nearly identical" to hers. *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 513 (5th Cir. 2001). If the plaintiff presents a prima facie case, the burden shifts to the defendant to demonstrate a "legitimate, nondiscriminatory justification for its actions." *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 881 (5th Cir. 2003). If the defendant offers such a justification, the burden again shifts to the plaintiff to show that the defendant's alleged justification was a pretext for discrimination. *Manning*, 332 F.3d at 881.

It is undisputed that Plaintiff, who is African-American, belongs to a protected class, that she was qualified for her position, and that she suffered an adverse employment decision, termination. No evidence has been presented concerning the person that replaced Plaintiff, but Plaintiff claims in an affidavit that the following Caucasian employees were not fired when they accumulated more than ten points: Jessica Milton, Carrie Lapine, Suzette Carpenter, and John Dolese. (Ex. A to Def.'s Mot. at p. 72). Plaintiff also asserts that some African-American employees were not terminated despite their violations of the attendance policy, but these individuals cannot be considered comparators because they are members of the same protected class as Plaintiff. Plaintiff admits that she does not have any records or files that supports her disparate treatment claim, but she asserts that she personally observed that the Caucasian comparators had violated the attendance policy, and were not terminated. (Ex. A Def.'s Mot. at pp. 69, 71-72). Defendant asserts that Greg Luckett, the Human Resources Manager of the store who fired Plaintiff, testified that Plaintiff was not terminated due to her race. (Luckett Dep. at 87-88). Defendant argues that Luckett's testimony is more persuasive than Plaintiff's

observations concerning other employees' attendance records, particularly since Luckett, who is African-American, is a plaintiff in a companion discrimination lawsuit filed against Defendant and Luckett is represented by the same attorneys as Plaintiff. However, this Court is not permitted to weigh the evidence during summary judgment proceedings. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 317, 322 (1986); *Man Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478 (5th Cir. 2006). Therefore, a genuine issue of material fact exists as to whether Plaintiff has set forth a prima facie claim for racial discrimination.

Defendant further asserts that Plaintiff's alleged violation of the attendance policy is a legitimate, nondiscriminatory reason for her termination. Pursuant to the attendance policy, employees were assigned "occurrence points" for each violation of the attendance policy. (Ex. 132 to Pl.'s Dep.) For example, an unexcused absence on a holiday, Saturday, or Sunday warranted three points, an unexcused absence on other days warranted two points, and tardies exceeding seven minutes warranted one point. (Ex. 132 to Pl.'s Dep.) The attendance policy that was provided to employees stated: "Once an associate accumulates a total of 10 occurrence points in a rolling 12 month period, the Manager and the Human Resource Manager should decide whether termination of the associate's employment is appropriate, provided the associate has already received appropriate counseling(s) for previous violations." (Ex. 132 to Pl.'s Dep.) The Human Resources Manager of the Hattiesburg Store, Greg Luckett, testified that he and two other managers kept track of the attendance policy at the Hattiesburg store. Luckett explained the policy as follows:

> A. We had a tracking log. And on this tracking log we would – you would allow ten tardiness in a run of a year, in a running year. And, say, for instance, if you had a tardiness – this is January, and you had one tardiness

>     this month and you had a tardiness for – say, a tardiness every month of the
>     year.  Or just say you had a tardiness of every other month, okay?
>     Q.  Right.
>     A.  Come next January if you had nine tardiness and you got to your January,
>     then one of them would fall off.  It would fall.
>     Q.  So more than ten within a rolling twelve months?
>     A.  A rolling twelve months, you know, we would terminate you.

(Luckett Dep. at 90-91).  Luckett testified that the attendance policy was not enforced before he began working at the store, and employees were not counseled regarding their attendance problems.  (Luckett Dep. at 91).  Employees should have been counseled at least two times before being terminated.  (Daniel Aponte Dep. at 32).  As a result, the point totals of employees who had accumulated ten or more points were reduced in March of 2005, in order to allow the employees time to correct their attendance problems.  (Danny Aponte Dep. at 33).  This program was called "amnesty."  (Luckett Dep. at 92).

On March 11, 2005, Plaintiff was notified by Luckett that she was being granted amnesty, and that her total would be reduced to 8 points.  There is no evidence in the record as to the actual amount of points that Plaintiff had accumulated at that time by March 11, 2005.  On May 30, 2005, Plaintiff was issued a final counseling notice after she received another point for tardiness.  On July 28, 2005, Plaintiff was terminated by Luckett.  The Discipline Notice regarding Plaintiff's termination provides that Plaintiff had "accumulated over the total 10 occurrence points in a rolling 12 month year [sic] period."  Luckett testified at his deposition that Plaintiff's termination was justified as a violation of company rules, and that he saw no reason to believe that the decision to terminate Plaintiff was based on race.  (Luckett Dep. at 87-88).

However, Plaintiff argues that there is no evidence that she accumulated ten or more points within the twelve months preceding her termination, July 2004 - July 2005.  Defendant

counters that the relevant time period was the year prior to the institution of the amnesty program, March 2004 - March 2005. However, Defendant has not submitted any testimony or evidence that supports this method of calculating tardies following the institution of the amnesty program, and during summary judgment proceedings, a court must draw all reasonable inferences in favor of the non-movant. *Rothgery v. Gillespie County, Tex.*, 491 F.3d 293, 296 (5th Cir. 2007). If a rolling twelve-month period is utilized, Plaintiff received one point on each of the following dates in the year that preceded her July 2005 termination: July 13, 2004, October 30, 2004, January 3, 2005, January 22, 2005, January 23, 2005, January 25, 2005, January 29, 2005, April 7, 2005, and July 15, 2005. Therefore, only nine points were accrued during the year immediately preceding Plaintiff's termination, while the acquisition of ten points is necessary in order to warrant termination pursuant to Defendant's policy. As a result, based upon the evidence now before the Court, it appears that Defendant may not have correctly applied the attendance policy to Plaintiff. Therefore, since Defendant has not articulated a legitimate, nondiscriminatory reason for Plaintiff's termination, Defendant is not entitled to summary judgment with regard to the race discrimination claim concerning Plaintiff's termination.

**DISPARATE PAY**

"To establish a prima facie case of racial discrimination with respect to compensation, the plaintiff must show that [she] was paid less than a member of a different race was paid for work requiring substantially the same responsibility." *Pittman v. Hattiesburg Mun. Separate Sch. Dist.*, 644 F.2d 1071, 1074 (5th Cir. 1981). To rebut the plaintiff's prima facie case, a defendant must articulate some legitimate, nondiscriminatory reason for the employment action. *Pittman*, 644 F.2d at 1075. If the defendant offers such a justification, the burden again shifts to the

plaintiff to show that the defendant's alleged justification was a pretext for discrimination. *Id.* at 1076. Plaintiff, who worked as a cashier, has established that Caucasian cashiers were paid higher wages than she was paid[1]. Therefore, she has established a prima facie case of pay discrimination.

As a result, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the difference in pay. Defendant asserts that merit raises for store employees are affected by the employee's performance and conduct, and that Plaintiff's lower pay was justified due to disciplinary notices she had received for her attendance and tardiness. However, the affidavit of Tammy Esskew, which was submitted in support of these assertions, generally provides that merit raises were affected by the employee's performance and conduct but does not state that performance and conduct actually resulted in *Plaintiff's* lower pay. (Ex. F to Def.'s Mot.) Additionally, Defendant has not submitted any other competent summary judgment evidence that explains Plaintiff's lower pay, and the Court cannot infer the reason behind Plaintiff's lower pay from the information provided by Esskew. Therefore, since Defendant has not articulated a legitimate, nondiscriminatory reason for the difference in pay, Defendant is not entitled to summary judgment as to Plaintiff's disparate pay claim.

**HOSTILE WORK ENVIRONMENT**

To state a hostile work environment claim, under Title VII, a plaintiff must show that: (1) the victim belongs to a protected group; (2) the victim was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term,

---

[1] Defendant asserts that African-American cashiers were also paid more than Plaintiff, but it is only necessary for Plaintiff to demonstrate that she was paid less persons outside her protected class in order to establish a prima facie claim.

---


condition, or privilege of employment; and (5) the victim's employer knew or should have known of the harassment and failed to take prompt remedial action. *Equal Employment Opportunity Comm'n v. WC&M Enter., Inc.*, 496 F.3d 393 (5th Cir. 2007).  For harassment to be sufficiently severe and pervasive to alter the conditions of the victim's employment, the conduct complained of must be both objectively and subjectively offensive.  *Id.*  Generally, "[a]lthough discriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive to support evidence of a Title VII violation, simple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory charges that can survive summary judgment."  *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347- 48 (5th Cir. 2007).

      Plaintiff asserts that she was subjected to a hostile work environment because she heard that a fellow employee had called her a "nigger."  However, Plaintiff has admitted that Defendant conducted an investigation concerning the other employee's conduct and was terminated for his conduct in less than one month.  Since Defendant quickly handled the problem and terminated the employee, this isolated incident was insufficient to alter the conditions of her employment. *See Turner*, 476 F.3d at 347-48 (holding that the employer's repeated references to inner-city youth as "ghetto children" was insufficient to support a hostile environment claim where the offensive statements ceased upon the employee's request).

      Additionally, Plaintiff asserts that, when Johnny Courtney, a male employee, was placed on light duty following an injury, the store manager said: "[T]ell that nigger that he hurt his finger not his butt."  (Pl.'s Aff. at ¶ 7)  Plaintiff admits that she did not hear this comment firsthand, but another employee, Alice Smith, told her about the statement.  However,

secondhand harassment should carry little weight when evaluating a hostile environment claim. *See, e.g., Bainbridge v. Loffredo Gardens, Inc.,* 378 F.3d 756, 759-60 (8th Cir. 2004) (holding that the plaintiff had failed to present sufficient evidence that harassment was severe where comments did not refer to him).  The statement allegedly made concerning Mr. Courtney is insufficient to support a hostile work environment claim, particularly where, as here, Plaintiff did not even hear the statement when it was made and the statement was not made regarding Plaintiff.

Plaintiff also asserts that the store manager, George Garza, harassed her by staring at her and bragging to Greg Luckett, "that bitch was scared, [sic] she was about to fall out of her shoes."  (Luckett Aff. at ¶ 8)  Plaintiff has not provided any further description of these staring incidents, and thus has not demonstrated that this harassment was based on a protected characteristic.  Therefore, Plaintiff has not established a hostile work environment claim, and Defendant is entitled to summary judgment regarding that claim.

**RETALIATION**

Defendant first asserts that Plaintiff failed to exhaust her administrative remedies with regard to her retaliation claim, since she did not allege that she was subjected to any form of retaliation in her EEOC charge.  (Ct. Rec. at 75-4, pp. 12-13).  The scope of a judicial complaint under Title VII is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.  *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970).  A plaintiff is barred from bringing a claim for retaliation that allegedly occurred prior to the submission of the EEOC charge if the retaliation is not alleged in the EEOC charge.  *Eberle v. Gonzalez,* 249 Fed. Appx. 622 at *5 (5th Cir. May 18, 2007).

Therefore, since Plaintiff alleges in her Complaint that she was retaliated against when she was forced to resign on July 28, 2005, but she did not allege retaliation in her EEOC charge that was submitted on September 15, 2005, Plaintiff failed to exhaust her administrative remedies with regard to her retaliation claim.

However, Plaintiff has also alleged a 42 U.S.C. § 1981 claim of retaliation, and exhaustion of remedies is not required for 1981 claims. *See Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000) (overruled on other grounds). Therefore, the Court must determine whether Defendant is entitled to summary judgment as to Plaintiff's 1981 retaliation claim. The same analysis applies to claims brought under section 1981 and Title VII. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281 (5th Cir. 2004).

In order to establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) she engaged in activity protected by Title VII; (2) that adverse employment action was taken against her; and (3) there is a causal link between the protected activity and the adverse employment action. *See Harvill v. Westward Commc'ns*, 433 F.3d 428, 439 (5th Cir. 2005). In Response to Defendant's Motion for Summary Judgment, Plaintiff asserts that Defendant retaliated against her for requesting that another employee who had called her a "nigger" be terminated. However, at her deposition, Plaintiff testified that she was not retaliated against for requesting that the other employee be terminated. (Ex. A to Def.'s Mot. at 34). Therefore, Plaintiff's retaliation claim is without merit, and Defendant is entitled to summary judgment.

**42 U.S.C. §1981**

Plaintiff also brings a claim under section 1981 for disparate treatment and hostile work environment. The analysis is the same under both section 1981 and Title VII. *Pegram*, 361

F.3d at 272.  The only difference is that a section 1981 claim "is not constrained by the administrative prerequisites [applicable to] Title VII claims."  *Walker*, 214 F.3d at 625.  Therefore the Court incorporates by reference the previous sections discussing these claims under Title VII.

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Mississippi courts recognize intentional infliction of emotional distress claims when the defendant's conduct evokes outrage or revulsion.  *Jones v. Fluor Daniel Serv. Corp.,* 959 So.2d 1044 (Miss. 2007).  "Liability has only been found where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *White v. Walker*, 950 F.2d 972, 978 (5th Cir. 1991) (quoting RESTATEMENT (SECOND) OF TORTS § 46 comt. d).

Plaintiff has not addressed Defendant's argument that it is entitled to summary judgment regarding her emotional distress claim, and it is unclear what conduct Plaintiff relies on in support of this claim.  However, the Court assumes that Plaintiff relies on the incident in which she was called a "nigger" by a fellow employee, and the incidents in which Garza stared at her.  The staring incidents do not constitute conduct that is extreme and outrageous enough to establish a claim for intentional infliction of emotional distress.  Additionally, the incident in which she was called a "nigger" was properly and efficiently handled by Defendant, since the offending employee was terminated.  Therefore, the incident is insufficient to establish a claim of intentional infliction of emotional distress.  As a result, Defendant is entitled to summary judgment regarding Plaintiff's emotional distress claim.

**IT IS THEREFORE ORDERED AND ADJUDGED** that Defendant's Motion for

Summary Judgment [74] is **GRANTED** as to Plaintiff's hostile work environment claim, retaliation claim, and intentional infliction of emotional distress claim, but is **DENIED** in all other respects.

    **SO ORDERED AND ADJUDGED** this the 5th day of December, 2007.


                                          s/ *Louis Guirola, Jr.*
                                          LOUIS GUIROLA, JR.
                                          UNITED STATES DISTRICT JUDGE